UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

PEDRO MENA,                                         :

               Petitioner,          :

    -against-                                      :

PHILLIP D. HEATH, Superintendent of       :
Sing Sing Correctional Facility,
                                 :

               Respondent.
--------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   5/31/2016

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
ANDREW L. CARTER**

11cv3681-ALC-FM

**FRANK MAAS,** United States Magistrate Judge.

        Pro se petitioner Pedro Mena ("Mena") brings this habeas proceeding pursuant to 28 U.S.C. § 2254 ("Section 2254") to challenge his conviction, following a jury trial in Supreme Court, New York County, on charges of Attempted Murder in the Second Degree, Assault in the First Degree, Criminal Possession of a Controlled Substance in the Third and Fourth Degrees, and Criminal Possession of a Weapon in the Second Degree (two counts).  Mena currently is incarcerated at the Sing Sing Correctional Facility in Ossining, New York, serving an sentence of twenty-two and one-half years, to be followed by five years of post-release supervision.

        In his amended habeas petition, Mena asserts that his convictions should be set aside for five reasons:  (1) the verdict was against the weight of the evidence; (2) the trial court erred by denying his motion to suppress his pre-arrest statements to police officers; (3) the trial court erred by admitting those statements without first balancing their probative value against the risk of prejudice; (4) his trial counsel was ineffective;

and (5) his appellate counsel was ineffective.  (See ECF No. 5 ("Amended Petition" or "Am. Pet.") at 6-26).[1]

For the reasons set forth below, I recommend that Mena's Amended Petition be denied.  Additionally, because Mena has not made the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not issue.

I.    Background[2]

    A.    Trial

On March 19, 2008, after rejecting the trial court's offer of a seventeen-year sentence covering all charges, (VD. 2), Mena's case proceeded to a jury trial before Justice William Wetzel.

        1.    People's Case

The People's proof at trial would have permitted a reasonable juror to find as follows:

---

[1]    Mena submitted two copies of his Amended Petition to the Pro Se Office, both dated July 12, 2011.  The first, which was filed on July 25 and contains twenty-seven consecutively paginated pages, appears complete.  (See ECF No. 5).  The second, filed on August 3, is fifty-one pages long, but appears to contain duplicative pages.  (See ECF No. 6).  Accordingly, because the August 3 petition adds nothing new, all citations in this Report and Recommendation refer to the July 25 petition.

[2]    "H." refers to the transcript of the suppression hearing, held on February 27, 2008.  (ECF No. 17).  "VD." refers to the transcript of the juror voir dire, conducted on March 18, 2008.  (ECF Nos. 17, 17-1).  "Tr." refers to the transcript of Mena's jury trial.  (ECF Nos. 17-2, 17-3, 17-4).  "S." refers to the minutes of Mena's sentencing on June 9, 2008.  (ECF No. 17-4).  "R." refers to the record filed by the Respondent.  (ECF Nos. 16-1, 16-2, 16-3).

On the evening of March 30, 2007, Mark Kittrell ("Kittrell") was attending someone's birthday party on the stoop of a building on West 148th Street, between Broadway and Amsterdam Avenue, in Manhattan.  (Tr. 38-39, 42).  Over the course of several hours, Kittrell had "[n]o more" than six drinks, and shared two marijuana joints, but was only "tipsy," not "fallen down drunk."  (Id. at 39-41, 86-89, 103-04).  At some point during the celebration, Kittrell noticed Mena standing on a stoop two buildings away.  (Id. at 42-43).  Kittrell and Mena were not friends, but knew each other "from the neighborhood."  (Id. at 34-37).[3]

At approximately 3:30 a.m. on March 31, Kittrell left his friends and walked across the street.  (Id. at 43-44, 93).  He saw Mena coming up the block and yelled at him.  (Id.).  Precisely what he said is unclear, but Kittrell described it as "just mumbled words, not even words at all," uttered because he was "messing with [Mena]." (Id. at 43-44).  According to Kittrell, he was "just clowning, just being stupid," and making only "nondescript noise[s]."  (Id. at 91).  After Mena responded, "I could have got you, why you playing me like that," Kittrell replied, "Yo, this is my neighborhood. You are not going to come around and tell me what I could do."  (Id. at 44-45).  The two men then walked away in separate directions, with Mena headed toward Broadway and Kittrell headed toward Amsterdam.  (Id. at 44-46, 93).

Shortly thereafter, as Kittrell was walking to the corner store, Mena

---

[3]     One or two months earlier, the two men had a "small brush off in [a] store," during which Mena had allegedly "act[ed] aggressive."  (Id. at 37-38).

approached him.  (Id. at 46, 96-97, 104).  Mena called Kittrell "[y]ou black mother

fucker," pulled a gun out of his jacket, and began to fire at Kittrell from six to eight feet

away.  (Id. at 46-50).  He shot Kittrell in the leg, back, arm, and lower abdomen.  (Id. at

55, 97-98).  Kittrell was taken to Harlem Hospital, where he remained for five days after

undergoing surgery on his abdomen.  (Id. at 55-56).[4]

       At the time of the shooting, NYPD Police Officers William McGill and

Jose Tirado were on duty in a marked police car two blocks away.  (Id. at 109-10, 185-

86).  They heard six or seven gunshots and responded to the 148th Street block within

"seconds."  (Id. at 110-11, 167, 186).  When they arrived, they observed approximately

ten people screaming and running toward Amsterdam Avenue, while just one other

person, later identified as Mena, was walking in the direction of Broadway.  (Id. at 111-

12, 167-68, 186-87).  Officer McGill decided to follow Mena while Officer Tirado tended

to Kittrell, who was lying on the ground.  (Id. at 53, 114-15, 187-88).

       Officer McGill saw Mena walk into a building on 148th Street, but then

begin to run up the interior stairs.  (Id. at 112-13, 168-70).  He attempted to follow Mena,

but the building's front door locked before he was able to do so.  (Id. at 113-14).  After

approximately ten to twelve minutes, a woman let Officer McGill and Lieutenant

Gribbon, a supervisor who had joined him, into the building.  (Id. at 114, 170, 173-75,

183).  After speaking with her, they went to Apartment 53, on the fifth floor.  (Id. at 115-

---

[4]     The attending surgeon who operated on Kittrell testified that if he had not been
treated promptly, he likely would have bled to death or died of an infection.  (Id. at 315).

4

16).  There they were joined at some point by a Sergeant Nunez.  (<u>Id.</u> at 116; <u>see also</u> H.

30).

   After the first two officers knocked on the door, it "fl[ew] open," and Mena

came out, slamming the door quickly behind him.  (Tr. 117-18, 175-76).  He was

sweating, wearing only a tee-shirt, and seemed "agitated, angry or upset about

something."  (<u>Id.</u> at 118).  Officer McGill asked Mena twice "What's up?"; both times

Mena responded simply by repeating "What's up?"  (<u>Id.</u> at 118, 176).  Eventually,

however, Mena agreed to accompany the officers downstairs, saying, "I had a beef

downstairs and . . . I'll go down with you guys if you don't mind, to retrieve my jacket."

(<u>Id.</u> at 119, 176).

   While Mena and the officers were walking down the stairs, Mena made

statements in Spanish that Officer McGill did not understand.  (<u>Id.</u> at 119-20).  Once they

exited the building, Mena volunteered, in English, "Look at these people, they're animals.

They're snitches and bitches.  All they do is kill each other."  (<u>Id.</u> at 120-21).  At the time,

most, if not all, of the people standing outside the building were African-American.  (<u>Id.</u>

at 121).

   When Mena again began to speak Spanish, Officer McGill asked Officer

Tirado, who was fluent in Spanish, to join him.  (<u>Id.</u> at 122, 189-90).  Officer Tirado

"listen[ed] to [Mena] rambling . . . [and] kept telling him, just relax, take it easy."  (<u>Id.</u> at

190).  Nevertheless, Mena volunteered, in substance, that if the officers "ever want[ed] to

wipe these people out . . . he's the guy," and that "nobody likes him," because "he's the

only Spanish guy on the block." (Id. at 190-91). When he made these statements, Mena was not being questioned, he was not handcuffed, and the officers' weapons were not drawn. (Id. at 116-19, 121, 190-91).

As an ambulance crew wheeled Kittrell past Officer McGill and Mena toward the ambulance on a gurney, Officer Tirado asked Kittrell whether he "recogniz[ed] anybody." (Id. at 54, 101-02, 122-24, 191-93). Kittrell responded, "That's him, the guy that shot me," indicating Mena. (Id. at 54-55, 101-02). Officer McGill then arrested Mena and brought him to the police precinct. (Id. at 123-25).

Later that day, Officer McGill obtained a search warrant for Apartment 53, which Mena had confirmed was his residence. (Id. at 127-28, 135, 179-80; see also id. at 256-57). In a bedroom, officers found a bag containing more than an eighth of an ounce of crack cocaine, some marijuana, a scale, baggies, Mena's W-2 form, and a cell phone bill addressed to Mena at Apartment 53. (Id. at 137-38, 140-42, 304). In a "trap" below a loose floor tile underneath a bed, the officers also found two boxes of .45 caliber bullets, various other loose bullets, and $4,500 in cash. (Id. at 196-98). Finally, in the kitchen, the officers found two guns inside the stove: (a) a loaded .45 caliber semi-automatic, which was "cocked" and "ready to be fired," along with an extra magazine;[5] and (b) a .38 caliber Smith and Wesson revolver, loaded with live bullets in five of its six chambers. (Id. at 151-55, 240-48). The police also recovered seven .45 caliber shell casings and two

---

[5]     One of the .45 caliber magazines was empty; the other contained two live rounds. (Id. at 244). Both magazines had a capacity of seven rounds and were operable with the .45 caliber semi-automatic found in the stove. (Id. at 273-74).

bullets from the street, (id. at 217-22), as well as a bullet that had been removed from

Kittrell's abdomen, (id. at 159-60, 205-06), all of which were determined to have been

fired from the .45 caliber semi-automatic found in the stove, (id. at 288-95).

        2.    <u>Defense Case</u>

        The defense did not present any evidence or call any witnesses.  (<u>See</u> id. at

316).

    B.    <u>Verdict and Sentencing</u>

        On March 24, 2008, after brief deliberations, the jury convicted Mena of

Attempted Murder in the Second Degree, Assault in the First Degree, Criminal

Possession of a Controlled Substance in the Third and Fourth Degrees, and two counts of

Criminal Possession of a Weapon in the Second Degree.  (<u>Id.</u> at 384-87).  Thereafter, on

June 9, 2008, Justice Wetzel sentenced Mena, as a second violent felony offender, to

concurrent determinate prison terms ranging from seven to twenty-two and one-half

years.  (S. 3, 8).  Justice Wetzel also sentenced Mena to five years of post-release

supervision.  (<u>Id.</u> at 8).

    C.    <u>Pretrial Suppression Hearing</u>

        Prior to trial, Justice Charles J. Tejada held a combined

<u>Dunaway</u>/<u>Wade</u>/<u>Huntley</u> hearing[6] on February 27, 2008.  (H. 1-78).  Officers McGill and

---

      [6]    <u>See</u> <u>Dunaway v. New York</u>, 442 U.S. 200, 214-16 (1979) (addressing the
lawfulness of seizure and arrest); <u>United States v. Wade</u>, 388 U.S. 218 (1967) (suggestiveness of
identification procedures); and <u>People v. Huntley</u>, 15 N.Y.2d 72 (1965) (voluntariness of
confessions).

Tirado testified for the People regarding Mena's pre-arrest statements to them outside his building and Kittrell's identification of Mena.  (Id. at 11-16, 48-52).  Mena did not present any evidence.  (Id. at 61).

At the conclusion of the hearing, Justice Tejada found that Mena's pre-arrest statements to the officers were "spontaneous" and not the result of any police interrogation, custodial or otherwise, which would have required Miranda warnings.  (Id. at 74-76).  He also found that Kittrell's identification of Mena was admissible, despite the inherently suggestive nature of show-ups, because it occurred "within a short time after the crime" and there was "no police identification to taint [it]."  (Id. at 76-77).  Finally, he found that there was probable cause to arrest Mena after Kittrell identified him.  (Id. at 77-78).  Accordingly, Justice Tejada denied Mena's motions to suppress his statements and Kittrell's identification.  (Id. at 77).

D.    Direct Appeal

In his appeal to the Appellate Division, First Department, Mena contended that:  (1) the verdict was against the weight of the evidence; and (2) the trial court erred by admitting his pre-arrest statements to the officers without first balancing their probative value against the risk of prejudice.  (R. 1-46).

On March 11, 2010, the Appellate Division affirmed Mena's judgment of conviction.  See People v. Mena, 897 N.Y.S.2d 57 (1st Dep't 2010).  Turning first to Mena's weight of the evidence claim, the court stated that there was "no basis for disturbing the jury's determinations concerning credibility and identification," and that

8

"[t]he victim's reliable identification of [Mena] was extensively corroborated by physical evidence and police testimony."  Id. at 57.  The court also rejected Mena's claim regarding the admission of his pre-arrest statements, concluding that the evidence was more probative than prejudicial because it went to Mena's motive and identity, both of which were at issue in the context of the case.  Id.  The court noted that Mena's "remaining contentions concerning this evidence" were unpreserved, and declined to review them in the interest of justice.  Id. at 58.  Finally, in an alternative holding, the court also found "no basis for reversal" on those grounds.  Id.

On April 12, 2010, Mena moved for leave to appeal to the New York Court of Appeals.  (R. 99-100).  On June 10, 2010, the Court of Appeals denied leave to appeal. (Id. at 104).

E.    Motion to Vacate Judgment

On March 15, 2011, Mena moved pro se for an order vacating the judgment of conviction against him, pursuant to New York Criminal Procedure Law ("CPL") § 440.10 ("Section 440.10").  (Id. at 105-38).  In this motion, Mena argued that:  (1) the prosecutor made improper prejudicial statements during summation regarding Mena's "drug operation;" (2) the trial court erred by denying his motion to suppress his pre-arrest statements because they were obtained in violation of his rights under Miranda v. Arizona, 384 U.S. 436, 444-45 (1966); (3) his right to counsel under state law was violated when Officers McGill and Tirado interrogated him outside the presence of counsel who represented him in two unrelated pending cases; and (4) his trial counsel was

9

ineffective for failing to (a) object to the prosecutor's allegedly prejudicial comments during summation, (b) object to Officer McGill's alleged failure to be sworn before testifying at trial, and (c) argue there was no probable cause for his arrest or that Kittrell's show-up identification of him was unduly suggestive.  (Id.).  In their opposition papers, the People argued both that Mena's claims were procedurally barred and that they lacked merit.  (Id. at 139-52).

On July 1, 2011, Justice Marcy L. Kahn denied Mena's Section 440.10 motion in its entirety.[7]  (Id. at 166-84).  Justice Kahn found that all of Mena's claims were procedurally barred under CPL § 440.10(2)(c) because Mena had the opportunity to advance them on direct appeal, but did not do so.  (Id. at 175, 177).[8]  Nevertheless, Justice Kahn went on to address (and reject) each of Mena's claims on the merits.  (Id. at 175-83).

Justice Kahn first found that it was proper for the prosecutor to suggest during summation that Mena ran a "drug operation" because the drugs and narcotics paraphernalia recovered from Mena's home supported that contention and were relevant to the charge of Criminal Possession of a Controlled Substance in the Third Degree, which required the People to prove that Mena possessed the drugs with the intent to sell them.  (Id. at 175-76).  Next, insofar as relevant, Justice Kahn rejected Mena's claim that

---

[7]     Justice Wetzel had retired after the trial.  (Id. at 166 n.1).

[8]     Justice Kahn also considered and denied any potential claim by Mena regarding "improper and prejudicial conduct not appearing in the record," because Mena provided neither "legal support . . . nor factual averments of improper off-the-record conduct."  (Id. at 176).

his pre-arrest statements to Officers McGill and Tirado were obtained in violation of Miranda because it previously had been addressed on the merits by Justice Tejada at the suppression hearing and hence was barred by CPL § 440.10(3)(b).  (Id. at 177-78).  Turning to Mena's related claim under state law, Justice Kahn found that Mena was not entitled to any relief because:  (1) People v. Bartolomeo, 53 N.Y.2d 225 (1981), upon which Mena relied, had been overruled by People v. Bing, 76 N.Y.2d 331, 340 (1990); (2) Mena was not in custody at the time of his statements; and (3) no counsel had entered an appearance in this case on his behalf at that time.  (Id. at 178-80).

Justice Kahn also addressed each of Mena's ineffective assistance claims. (Id. at 180-83).  The Justice rejected Mena's claim that his trial counsel was ineffective for failing to object to the prosecutor's reference to Mena's "drug operation" because there was no merit to the underlying claim.  (Id. at 180-81).  The Justice rejected both any underlying claim regarding Officer McGill's alleged failure to take the oath, as well as the derivative ineffective assistance claim, because a presumption of regularity applied to such routine procedures as the taking of an oath prior to testimony when the record was silent, and Mena had failed to offer substantial evidence to overcome that presumption. (Id. at 181-82).  Finally, Justice Kahn found that Mena's trial counsel had in fact argued at the suppression hearing both that the People lacked probable cause to arrest him and that the show-up identification was suggestive, although these arguments were rejected by Justice Tejada.  (Id. at 182-83).

Mena timely sought leave to appeal the denial of all of the claims in his

Section 440.10 motion.  (Id. at 187-221).  On June 26, 2012, the Appellate Division

denied that request.  (Id. at 227).

      F.     Motion for Writ of Error Coram Nobis

          On May 9, 2011, Mena filed a pro se motion in the Appellate Division

seeking a writ of error coram nobis, on the ground that his appellate counsel was

ineffective for having failed to argue that his trial counsel was ineffective.  (Id. at 228-

59).  By order dated December 1, 2011, the Appellate Division summarily denied that

motion.  (Id. at 274).  Mena sought leave to appeal to the Court of Appeals, (id. at 275),

which was denied on March 30, 2012, (id. at 279).

      G.     Habeas Petition

          On May 16, 2011, Mena timely filed a pro se habeas petition.  (ECF No. 2).

On June 30, 2011, Chief Judge Loretta A. Preska issued an order directing Mena to

amend his petition within sixty days to clarify (1) the specific grounds on which he

sought relief, and (2) any steps he had taken to exhaust those claims.  (ECF No. 4).

          On July 25, 2011, Mena filed his Amended Petition, which asserts that his

convictions should be set aside for five reasons:  (1) the verdict was against the weight of

the evidence; (2) the trial court erred by denying his motion to suppress his pre-arrest

statements to police officers; (3) the trial court erred by admitting those statements

without first balancing their probative value against the risk of prejudice; (4) his trial

counsel was ineffective; and (5) his appellate counsel was ineffective.  (Am. Pet. at 6-26).

12

The Amended Petition also indicated that Mena's motions for Section 440.10 relief and a writ of error <u>coram</u> <u>nobis</u> were pending.  (<u>Id.</u> at 4-5).

Thereafter, this action effectively remained stayed until March 20, 2014, when the Pro Se Office of this Court learned that Mena's <u>pro</u> <u>se</u> Section 440.10 motion and motion for a writ of error <u>coram</u> <u>nobis</u> had been resolved.  Around that time, the proceeding also was reassigned to Your Honor.  Accordingly, on April 2, 2014, Your Honor entered an order directing the Respondent to answer.  (<u>See</u> ECF No. 8).  After two extensions of time, the Respondent filed his opposition papers on August 29, 2014.  (ECF Nos. 14-17).  No reply having been filed within the thirty-day time period (or thereafter), the Amended Petition is fully submitted.

II.    <u>Standard of Review</u>

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  <u>Herrera v. Collins</u>, 506 U.S. 390, 401 (1993).  Rather, a state prisoner seeking habeas relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petitioner bears the burden of proving, by a preponderance of the evidence, that his rights have been violated.  <u>Jones v. Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides, in part, that:

> An application for a writ of habeas corpus on behalf of
> a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was <u>contrary to</u>, or
> involved an <u>unreasonable application of</u>, clearly
> established Federal law, as determined by the Supreme
> Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in <u>Jones v. Stinson</u>, the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'" 229 F.3d 112, 119 (2d Cir. 2000). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409.  This standard does not require that reasonable jurists all would agree that the state court was wrong.  <u>Id.</u> at 409-10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" <u>Stinson</u>, 229 F.3d at 119 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 109 (2d Cir. 2000)).

14

Section 2254(d)(2) further authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  To the extent that a habeas petition challenges factual findings, however, Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Id. § 2254(e)(1).

Section 2254 thus embodies a "'difficult to meet' . . . and 'highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt.'"  Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)).  Despite this standard, however, if "a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams, 529 U.S. at 389.

III.    Discussion

A.    Weight of the Evidence

Mena's first claim is that the verdict was against the weight of the evidence. (Am. Pet. at 6-8).  The Respondent argues that this claim is un-exhausted because Mena failed to raise it in constitutional terms on his direct appeal.  (ECF No. 15 (Resp't's Mem. of Law ("Resp't's Mem.")) at 21-23).  There is no need to address this contention because

AEDPA permits a federal court to deny a claim on the merits notwithstanding the petitioner's failure to exhaust the claim.  See 28 U.S.C. § 2254(b)(2).

      A "challenge to a verdict based on the weight of the evidence is different from a challenge based on the sufficiency of the evidence."  Quintana v. Lee, No. 12 Civ. 3204 (PGG) (FM), 2014 WL 6749207, at *6 (S.D.N.Y. Nov. 18, 2014) (quoting Minigan v. Donnelly, No. 01 Civ. 0026A (VEB), 2007 WL 542137, at *13 (W.D.N.Y. Feb. 16, 2007)) (emphasis in original).  A weight-of-the-evidence claim requires the reviewing court to "weigh the relative probative force of conflicting testimony and relative strength of conflicting inferences that may be drawn from the testimony."  People v. Bleakley, 69 N.Y.2d 490, 495 (1987) (internal quotation marks and citations omitted).  In a criminal trial, however, the jury is the sole arbiter of witness credibility.  Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994).  Moreover, "a habeas court must defer to the assessments of the weight of the evidence and credibility of the witnesses that were made by the jury." Frazier v. New York, 187 F. Supp. 2d 102, 109-10 (S.D.N.Y. 2002) (citing Herrera v. Collins, 506 U.S. 390 (1993)).  It therefore is well-established that weight-of-the-evidence claims are not cognizable on habeas review.  See Givens v. Burge, No. 02 Civ. 0842 (JSR) (GWG), 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003) (collecting cases); Garbez v. Greiner, No. 01 Civ. 9865 (LAK) (GWG), 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002) (weight-of-the-evidence claims are based purely in state law). Consequently, Mena cannot pursue that claim in this proceeding.

Even if Mena's claim were to be construed as a sufficiency-of-the-evidence claim, it is clear that he would not be entitled to relief.  To prevail on a sufficiency claim, a habeas petitioner must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Bossett, 41 F.3d at 830 (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)).  In considering such a claim, a habeas court thus must weigh the evidence in the light most favorable to the prosecution and draw all permissible inferences in its favor.  Jackson, 443 U.S. at 319, 326.   For this reason, even "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction."  United States v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979); see also Edwards v. Jones, 720 F.2d 751, 755 (2d Cir. 1983) (following Danzey even though the testimony and character of the sole witness who directly implicated the petitioner were "less than inspiring"); Means v. Barkley, No. 98 Civ. 7603 (DLC), 2000 WL 5020, at *4 (S.D.N.Y. Jan. 4, 2000) (applying Danzey and noting that habeas court may set aside conviction only if testimony is "incredible as a matter of law").

In order to convict Mena of Attempted Murder in the Second Degree, the prosecution had to establish that, "with intent to cause the death of another person," he attempted to "cause[] the death of such person."  N.Y. Penal L. §§ 110, 125.25(1).  At trial, Kittrell's testimony established that Mena, an acquaintance of his, shot him multiple times at close range on a well-lit street after Kittrell had taunted him.  (See Tr. 34-37, 43-50, 55, 64, 124, 193).  This testimony alone was sufficient to satisfy the elements of the second degree attempted murder charge.  Moreover, the People also established that a gun

17

recovered from Mena's apartment had fired several of the bullets found on the street where the shooting occurred, as well as the bullet removed from Kittrell's abdomen.  (See id. at 159-60, 205-06, 217-22, 288-95).  Drawing all inferences in favor of the People, this Court clearly cannot say that a rational trier of fact considering this evidence would have been unable to convict Mena of second degree attempted murder.

Similarly, when the search warrant was executed at Mena's apartment, among the items that the police recovered were more than an eighth of an ounce of crack cocaine, some marijuana, a scale, and baggies, as well as two firearms and a large amount of cash.  (See id. at 137-38, 140-42, 151-55, 196-98, 240-48, 304).  From these items, a jury certainly could infer that Mena was engaged in the sale of narcotics and not merely a user.  There consequently is no basis for Mena to argue that the evidence with respect to the two narcotics charges against him was legally insufficient.

Accordingly, even if Mena's weight-of-the-evidence claim is construed as a sufficiency-of-the-evidence claim, he would not be entitled to any relief on this ground.

B.    Motion to Suppress Statements

Mena next contends that the trial court erred by denying his motion to suppress his pre-arrest statements to police officers, both because they were obtained in violation of Miranda, and because his right to counsel under state law was violated when the police interrogated him outside the presence of his counsel in unrelated pending cases. (Am. Pet. at 8-11).  As the Respondent correctly observes, (see Resp't's Mem. at 26-35), these claims are both procedurally barred and lacking in substantive merit.

18

1.     Procedural Default

A federal habeas court generally is precluded from reviewing a petitioner's claim if the state court's denial of it rested on an adequate and independent state ground. See, e.g., Harris v. Reed, 489 U.S. 255, 260 (1989); Wainwright v. Sykes, 433 U.S. 72, 81 (1971).  A petitioner's failure to comply with a state procedural rule qualifies as such an adequate and independent state ground, provided that (a) the state court actually "relied on the procedural bar as an independent basis for its disposition of the case," Harris, 489 U.S. at 261-62 (internal quotation marks and citation omitted), and (b) the state procedural rule is "firmly established and regularly followed," Cotto v. Herbert, 331 F.3d 217, 239-40 (2d Cir. 2003) (quoting Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999)) (internal quotation marks omitted).  A claim rejected under these circumstances is considered "procedurally defaulted."  Coleman v. Thompson, 501 U.S. 722, 731 (1991). Even if the state court proceeds to consider the merits of the claim, its reliance on a procedural ground as one basis for the denial of the claim generally precludes habeas review.  Garcia, 188 F.3d at 77.

There is a narrow exception permitting federal review despite a petitioner's default when a petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  To establish cause for a default, a petitioner must adduce "some objective factor external to the defense" that explains why he did not raise the claim previously.  Gonzalez v. Sullivan,

934 F.2d 419, 422 (2d Cir. 1991) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

A showing of prejudice requires a petitioner to demonstrate that the failure to raise the

claim previously had a substantial injurious effect on the petitioner's case such that he

was denied fundamental fairness.  See Carrier, 477 U.S. at 493-94.  Finally, to establish a

fundamental miscarriage of justice, a petitioner must demonstrate that he is "actually

innocent."  See Schlup v. Delo, 513 U.S. 298, 324 (1995); Aparicio v. Artuz, 269 F.3d 78,

90 (2d Cir. 2001).

   Here, in her decision denying Mena's Section 440.10 motion, Justice Kahn

found that each of Mena's claims concerning his pre-arrest statements to police officers

related to "a matter of record which could have been advanced by [Mena] on his direct

appeal," which Mena "unjustifiably failed to do."  (R. 177).  In making this

determination, the Justice expressly relied on CPL § 440.10(2)(c).  Pursuant to that

statute, a trial court must deny a Section 440.10 motion if, "sufficient facts appear on the

record of the proceedings underlying the judgment to have permitted, upon appeal from

such judgment, adequate review of the ground or issue raised upon the motion, [but] no

such appellate review or determination occurred owing to the defendant's unjustifiable

failure . . . to raise such ground or issue upon an appeal actually perfected by him."  CPL

§ 440.10(2)(c).  "The purpose of this rule 'is to prevent [Section] 440.10 from being

employed as a substitute for direct appeal when [the] defendant was in a position to raise

an issue on appeal . . . or could readily have raised it on appeal but failed to do so.'"

Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 2003) (brackets and ellipsis in original)

(quoting People v. Cooks, 67 N.Y.2d 100, 103 (1986)).

"Where a claim is sufficiently based in the record, a state court's reliance on [Section] 440.10(2)(c) constitutes an adequate and independent state ground that ordinarily precludes a federal court from further habeas review." Finley v. Graham, No. 12 Civ. 9055 (KMK) (PED), 2016 WL 47333, at *10 (S.D.N.Y. Dec. 31, 2015) (quoting La Touche v. Graham, No. 10 Civ. 1388 (VB), 2013 WL 5323499, at *12 (S.D.N.Y. Sept. 23, 2013)).  Here, Mena has not suggested any reason to believe that the state court's rejection of his claims concerning his pre-arrest statements on procedural grounds was factually or legally incorrect.  Nor has Mena shown either cause for the default or that he is actually innocent.  It follows that this Court need not address his claims regarding the denial of his motion to suppress his pre-arrest statements.  Significantly, even if Mena were able to overcome his procedural default, he still would not be entitled to any relief based on the use of his statements for the reasons set forth below.

2.    Merits of the Claim

a.    Miranda

Under the Supreme Court's landmark decision in Miranda, a criminal suspect must be advised of his rights and waive them before any statement that he makes during a custodial interrogation may be used against him.  384 U.S. at 444-45.  In determining whether a suspect was subject to custodial interrogation, a court must ask "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984).  A suspect is in "custody" if a

reasonable person in his position would "have felt he . . . was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995). This test "is an objective one that ([i]) asks whether a reasonable person would have understood [him]self to be subjected to restraints comparable to those associated with a formal arrest, and ([ii]) focuses upon the presence or absence of affirmative indications that the defendant was not free to leave." Tankleff v. Senkowski, 135 F.3d 235, 243-44 (2d Cir. 1998) (citation omitted). "An accused is in custody when, even in the absence of an actual arrest, law enforcement officials act or speak in a manner that conveys the message that they would not permit the accused to leave." Id. at 244.

At Mena's pretrial suppression hearing, Justice Tejada credited the testimony of Officers McGill and Tirado, finding that Mena's statements to them were not "the result of any police custodial interrogation." (H. 74) (emphasis added). Indeed, as Justice Tejada noted, Mena "was not in handcuffs, no guns were drawn[,] and no force was used." (Id. at 76). Moreover, as Officer McGill testified, Mena had volunteered to accompany the officers downstairs in order to retrieve his jacket. (Id. at 11; see also Tr. 119, 176). In these circumstances, there is nothing to suggest that a reasonable person in Mena's position would "have felt he . . . was not at liberty to . . . leave." Thompson, 516 U.S. at 112.

Even if Mena had been in custody at the time of his statements, it similarly is clear that he was not subject to any interrogation. As the Supreme Court has made clear, even if a suspect is in custody, Miranda warnings are not required unless he is

22

subject to "either express questioning or its functional equivalent," which consists of "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response."  Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980); see also United States v. Vigo, 487 F.2d 295, 300 (2d Cir. 1973) (spontaneous statements made by a suspect outside of custody are not the product of an interrogation as defined by Miranda).  Here, Justice Tejada found that Mena's statements were "spontaneous statements made . . . without even the police asking him any questions, or anyone asking him any questions." (H. 77).  This conclusion is amply supported by the record.  Officer McGill testified that Mena volunteered his first statement, in English, right after they exited the building.  (Id. at 12-13, 38-39; see also Tr. 120-21).  Similarly, Officer Tirado testified that Mena volunteered the second statement, in Spanish, while they were standing outside the building.  (H. 48-49, 60; see also Tr. 190-91).

        Justice Tejada's factual determination that Mena was neither in custody nor interrogated must be presumed to be correct in the absence of clear and convincing evidence to the contrary.  See 28 U.S.C. § 2254(e)(1).  Mena, however, has offered no such evidence.  Nor has he shown that the Justice's decision to deny Mena's Miranda claim was either contrary to or an unreasonable application of clearly established federal law.  See Williams, 529 U.S. at 409.  It follows that Mena would not be entitled to any relief based on Miranda even if this Court were to reach his claim.

        b.      State Law

23

On habeas review, a district court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991); see also 28 U.S.C. § 2254(a).  Mena bases his state law right to counsel claim on the New York Court of Appeals decision in Bartolomeo, which held that a suspect represented by counsel on a pending charge could not waive his right to counsel on a new charge. 53 N.Y.2d at 231.  This right, however, was solely a creature of New York law.  See, e.g., United States v. Broccolo, 797 F. Supp. 1185, 1196 (S.D.N.Y. 1992) ("Under the law of this Circuit, in contrast to what had been the law of the State of New York during most of the last decade, . . . a suspect has no indelible Sixth Amendment right to counsel which requires the presence of counsel in order for a waiver of such right to be recognized.") (citation omitted).  Moreover, as Justice Kahn noted in denying Mena's Section 440.10 motion, Bartolomeo was expressly overruled by Bing, 76 N.Y.2d at 350.  Accordingly, even if Mena's claim under Bartolomeo could be considered, habeas relief would not be warranted.  See, e.g., Weeks v. Senkowski, 275 F. Supp. 2d 331, 340 (E.D.N.Y. 2003) (finding Bartolomeo claim meritless post-Bing even if it were cognizable on habeas review).

     C.     Undue Prejudice

Prior to the commencement of trial, Mena moved to exclude his racially-charged statements to the officers as "not really probative of his motive," "certainly not admissions," "irrelevant," and ultimately likely only to "inflame the jury."  (Tr. 2).  In opposition, the People argued that the statements were relevant with respect to both

24

Mena's motive and his identity.  (Id. at 3).  Justice Wetzel denied Mena's motion, finding

the statements probative of both motive and identity, and noted that the People were

entitled to latitude to introduce the statements given the fact that the defense's theory of

the case had not been disclosed.  (Id. at 3-4).

        In this habeas proceeding, Mena contends that the trial court erred by

admitting the statements without first balancing their probative value against the risk of

prejudice.  (Am. Pet. at 6-8).  Mena advanced this argument on his direct appeal, but the

Appellate Division denied relief, reasoning as follows:

> The [trial] court properly exercised its discretion in permitting
> the People to elicit [Mena]'s racially offensive statements to
> the police shortly after the shooting.  We conclude that, in the
> context of the case, this evidence was more probative than
> prejudicial.  Although [Mena] was not charged with hate
> crimes under Penal Law § 485.05, and motive was not an
> element to be proven, motive was nevertheless an important
> issue.  While the prosecution contended that [Mena] shot the
> victim seven times in revenge for an insult, the defense
> argued that such an overreaction to trivial teasing was
> implausible.  Accordingly, [Mena]'s racially charged
> comments tended to explain the overreaction by showing that
> [Mena]'s intense racism was a contributing factor.  In
> addition, there was a relationship between the statements at
> issue and epithets used by the assailant during the crime that
> was sufficient to make the statements relevant to the issue of
> identity.

Mena, 897 N.Y.S.2d at 57-58.

        It is well-established that a habeas petitioner may not obtain relief merely

by showing that a state court's evidentiary ruling was erroneous as a matter of state law.

See Estelle, 502 U.S. at 67.  Rather, to warrant habeas relief, the effect of the ruling must

have been "so pervasive as to have denied [the petitioner] a fundamentally fair trial."

Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (citation omitted).  "The first step in this

analysis is to determine whether the state court decision violated a state evidentiary rule,

because the proper application of a presumptively constitutional state evidentiary rule

could not be unconstitutional."  King v. Greiner, No. 02 Civ. 5810 (DLC) (AJP), 2008

WL 4410109, at *38 (S.D.N.Y. Sept. 26, 2008).

 Under New York law, "all relevant evidence is admissible unless its

admission violates some exclusionary rule."  People v. Scarola, 71 N.Y.2d 769, 777

(1988) (citation omitted).  Evidence is relevant when it will help prove the "existence of

any material fact," but a trial court may, in its discretion, exclude relevant evidence "if its

probative value is substantially outweighed by the danger that it will unfairly prejudice

the other side or mislead the jury."  Id.  Here, Mena has failed to show that the trial court

committed error under this clearly-established state evidentiary rule.

 Justice Wetzel permitted the officers to testify regarding Mena's statements

because they were probative of both Mena's motive and his identity.  (See Tr. 3-4).

Although Mena's motive for shooting Kittrell was not an element of any of the charges

the People had to prove, it nevertheless related to an important issue.  Kittrell's testimony

indicated that his confrontation with Mena was relatively minor, consisting of "just

mumbled words," or "not even words at all," and that he was "just messing with [Mena]."

(Id. at 43-44).  As a result, the People reasonably sought to introduce Mena's racially-

charged statements in order to provide further context regarding what the jury might

otherwise have considered an implausible reaction on Mena's part.  In fact, during

summation, defense counsel challenged the plausibility of Mena's alleged decision to

shoot Kittrell over some mere "mumbled words."  (Id. at 322).  Mena's statements also

were relevant to Kittrell's identification of him as the shooter, in light of the defense's

attempts to paint Kittrell as not credible.  (See, e.g., id. at 318-19).  The fact that Mena

had made unsavory comments about members of Kittrell's race tended to corroborate

Kittrell's testimony that Mena was his attacker and said to Kittrell as he began to shoot,

"You black mother fucker."  (Id. at 46-50).

Mena is correct that he was not charged with any hate crimes that would

have directly put at issue his racial views.  Moreover, the statements that he made

obviously painted him in a bad light.  Nevertheless, New York law does not require the

suppression of prejudicial evidence unless its prejudice "substantially outweighs" its

probative value.  See Scarola, 71 N.Y.2d at 777.  The federal rule is, of course, the same.

See Fed. R. Evid. 403.  Here, as the Appellate Division found, Mena cannot show that

Justice Wetzel's decision to admit his racially-charged statements was an erroneous

application of this established evidentiary rule regarding the admission of evidence.

That said, although none was requested, it obviously would have been

better for Justice Wetzel to include a limiting instruction regarding the use of the

statements in his jury charge.  In the absence of such an instruction, Mena may

conceivably have suffered some prejudice through the introduction of his racist

statements.  Even if the failure to give such an instruction was error, however, the proof

against Mena was overwhelming since the gun that was used to shoot Kittrell was found in his apartment.  It follows that the admission of testimony regarding Mena's racial views could not have deprived him of a fundamentally fair trial.  Mena therefore is not entitled to habeas relief on this ground.

       D.    <u>Ineffective Assistance of Trial Counsel</u>

      Mena next contends that his trial counsel, Richard Wojszwilo, Esq. ("Mr. Wojszwilo"), was ineffective for failing to:  (1) object to the prosecutor's allegedly prejudicial comments during summation, (Am. Pet. at 6-8); (2) object to Officer McGill's alleged failure to be sworn before testifying at trial, (<u>id.</u> at 11-12); and (3) argue that Kittrell's show-up identification of Mena was unduly suggestive and that there consequently was no probable cause for Mena's arrest, (<u>id.</u> at 12-13).  Justice Kahn found that each of these claims was "mandatorily procedurally barred" because Mena could have raised them as part of his direct appeal, but "unjustifiably failed to do so."  (R. 177) (citing CPL § 440.10(2)(c)).  Mena has not shown any reason why the state court's reliance on this independent state law ground should not preclude his assertion of these claims in this forum.  Accordingly, this Court need not address Mena's ineffectiveness claims.  <u>See</u> <u>Harris</u>, 489 U.S. at 260.  Importantly, however, Mena would not be entitled to habeas relief even if this Court were to reach the merits of those claims.

      In order to prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that (1) his counsel's performance "fell below an objective standard of reasonableness" and (2) there is a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688-94.  With respect to the first of these requirements, there is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance." Id. at 689.  This deference is due because "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. 685, 702 (2002).  Therefore, a petitioner must overcome the "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 698 (quoting Strickland, 466 U.S. at 689) (internal quotation marks omitted).

Although the Strickland test has two prongs, a court considering an ineffective assistance claim need not "address both components of the [Strickland] inquiry if the [petitioner] makes an insufficient showing on one." Strickland, 466 U.S. at 697.  Indeed, as the Supreme Court noted in Strickland, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id.

Here, of course, Mena advances his ineffectiveness of trial counsel claim through a Section 2254 proceeding.  As the Supreme Court recently has reaffirmed, "[w]hen a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel," the court is required to "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 134 S. Ct. 10, 13 (2013) (quoting Cullen, 563 U.S. at 190).  For this

29

reason, it is scarcely surprising that "the great majority of habeas petitions that allege constitutionally ineffective counsel" fail.  Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

> 1.    Prosecutor's Summation

Mena first maintains that Mr. Wojszwilo was ineffective because he failed to object to the prosecutor's allegedly prejudicial comments during summation. Specifically, Mena believes that the prosecutor "infuriated the jury" by "alleging that [Mena] ran a drug operation," even though such "evidence . . . was not submitted to the jury [or] admitted by the court."  (Am. Pet. at 6; see also Tr. 351-54).

Generally, the prosecution is entitled to "broad latitude in the inferences it may reasonably suggest to the jury during summation."  United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) (citation omitted).  Here, the People established that, in or near Mena's bedroom, officers found a quantity of crack cocaine, some marijuana, a scale, baggies, several boxes of bullets, and $4,500 in cash.  (Tr. 137-38, 140-42, 196-98, 304). From this evidence, it certainly was reasonable to infer, and therefore for the prosecutor to argue, that Mena was selling drugs.  Indeed, it is clear that the jurors found the inference reasonable since they found him guilty of Criminal Possession of a Controlled Substance in the Third Degree, which requires proof that the accused "knowingly and unlawfully possesse[d] . . . a narcotic drug with intent to sell it."  N.Y. Penal L. § 220.16(1).  Mena therefore was not unfairly prejudiced by the prosecutor's comments, and his counsel had no duty to object.

2.    <u>Failure to Take Oath</u>

Mena further contends that Mr. Wojszwilo was ineffective because he failed to object to the fact that "Officer McGill was not given his oath prior to testifying." (Am. Pet. at 11). He bases this claim on the fact that the trial transcript does not indicate that Officer McGill was "duly sworn," (<u>see</u> Tr. 105-06), as it did for the other trial witnesses, (<u>see, e.g.</u>, <u>id.</u> at 29 (Kittrell), 184 (Officer Tirado)). At best, this omission indicates that Officer McGill might not have been sworn; it certainly does not compel that conclusion, as Mena seems to suggest.[9]

In resolving this issue, courts must apply a "strong presumption of constitutional regularity in state judicial proceedings." <u>Darr v. Burford</u>, 339 U.S. 200, 218 (1950). Indeed, this presumption of regularity in criminal proceedings may be overcome only by "substantial evidence to the contrary." <u>See</u> <u>People v. Harris</u>, 61 N.Y.2d 9, 16 (1983); <u>accord</u> <u>Benitez v. Senkowski</u>, No. 97 Civ. 7819 (DLC), 1998 WL 668079, at *8 (S.D.N.Y. Sept. 17, 1998) ("A habeas court will presume 'regularity' in the conduct of the trial, absent substantial contrary evidence."); <u>Theard v. Artus</u>, No. 09 Civ. 5702 (NGG) (LB), 2012 WL 4756070, at *13 n.17 (E.D.N.Y. Aug. 27, 2012) ("[I]f there is any doubt as to whether the oath was correctly administered, there is a 'strong presumption of constitutional regularity in state judicial proceedings.'") (quoting <u>Darr</u>, 339 U.S. at 218)).

---

[9]    In fact, there was an off-the-record discussion between Justice Wetzel and counsel immediately before Officer McGill's testimony, which could explain why the court reporter failed to record the administration of the oath. (<u>See</u> <u>id.</u> at 105).

Mena has put forth no evidence other than his own belief – and thus certainly no substantial evidence – from which a finder of fact could conclude that Officer McGill was not duly sworn.  He therefore has not met his substantial evidentiary burden.  Furthermore, even if Officer McGill was not duly sworn, "[t]he presumption of regularity allows a court to assume that an official or person acting under an oath of office will not do anything contrary to his or her official duty or omit to do anything which his or her official duty requires to be done."  Jones v. Vacco, No. 96 Civ. 4907 (SAS), 1996 WL 535544, at *2 (S.D.N.Y. Sept. 19, 1996) (quoting People v. Bicet, 580 N.Y.S.2d 55, 56 (2d Dep't 1992)).  There consequently is no reason to believe that Officer McGill did not testify truthfully at trial.  Indeed, there is no doubt that he was duly sworn at the pretrial suppression hearing, during which he provided substantially the same testimony as he did at trial.  (See H. 3-42).  Accordingly, any claim that Mena's conviction should be set aside due to Officer McGill's alleged failure to take the oath necessarily fails.

Mena's claim that Mr. Wojszwilo should have objected to Officer McGill's failure to take the oath at trial is similarly without merit.  At the outset, Mr. Wojszwilo could hardly have been expected to object to something that did not occur, so if the presumption applies, Mena cannot show that his counsel acted unreasonably.  Also, even if Officer McGill was not duly sworn, this hardly means that his testimony was false.  For this reason, Mr. Wojszwilo may well have concluded that it would only heighten the jurors' belief in the truthfulness of Officer McGill's testimony if he were to object and insist that the oath be administered.  See, e.g., Cohen, 427 F.3d at 170 ("[D]ecisions such

as when to object and on what grounds are primarily matters of trial strategy and tactics

and thus are virtually unchallengeable absent exceptional grounds for doing so.") (internal

quotation marks and citations omitted).  It is, of course, counsel's duty not to advance a

claim that he believes would be frivolous.  See Rule 3.1(a), N.Y. Comp. Codes R. &

Regs. tit. 22, § 1200 (2013) ("A lawyer shall not bring or defend a proceeding, or assert

or controvert an issue therein, unless there is a basis in law and fact for doing so that is

not frivolous."); see also German-Yunga v. Racette, No. 14 Civ. 4537 (ERK), 2016 WL

335865, at *6 (E.D.N.Y. Jan. 27, 2016) (habeas petitioner's argument that counsel's

failure to object to an interpreter not being sworn constituted ineffective assistance was

meritless); Gutierrez v. Scott, 56 F.3d 1386 (5th Cir. 1995) (per curiam) (no ineffective

assistance where appellant failed to show that witness' testimony, even if unsworn, would

have differed had counsel objected).  Accordingly, Mena is not entitled to habeas relief

based on his counsel's conceded failure to object to Officer McGill's testimony on the

basis that it was unsworn.

### 3.    Lack of Probable Cause and Suggestive Identification

Last, Mena contends that Mr. Wojszwilo was ineffective for failing to argue

either that there was no probable cause for Mena's arrest or that Kittrell's show-up

identification of Mena was unduly suggestive.  As Justice Kahn noted in denying Mena's

Section 440.10 motion, (R. 182-83), Mr. Wojszwilo in fact clearly did advance both of

these arguments – albeit unsuccessfully – at the pretrial suppression hearing, (H. 63-65).

Accordingly, Mena's conclusory assertion that he did not is entirely without merit and

cannot form a basis for habeas relief.

    E.    <u>Ineffective Assistance of Appellate Counsel</u>

       Mena's final claim is that his appellate counsel was ineffective because he failed to raise on appeal Mr. Wojszwilo's alleged ineffectiveness at trial.   (Am. Pet. at 13-26).  Mena cites the same three grounds discussed previously, (Am. Pet. at 13-17, 19-26), as well as one additional shortcoming – Mr. Wojszwilo's failure to object to the trial court's denial of Mena's motion to suppress his statements, (<u>id.</u> at 17-19).

       The <u>Strickland</u> test "applies to the evaluation of appellate counsel as well as trial counsel."  <u>Frederick v. Warden, Lewisburg Corr. Facility</u>, 308 F.3d 192, 197 (2d Cir. 2002).  In preparing a brief, however, appellate counsel is not required to raise every claim arising out of a trial and has the discretion to eliminate weaker ones.  <u>Jones v. Barnes</u>, 463 U.S. 745, 751-53 (1983); <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994) ("counsel does not have a duty to advance every nonfrivolous argument that could be made").  Furthermore, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  <u>United States v. Aguirre</u>, 912 F.2d 555, 560 (2d Cir. 1990) (quoting <u>Strickland</u>, 466 U.S. at 689).  In order to satisfy the first prong of the <u>Strickland</u> standard, Mena therefore must show that his appellate counsel did something more than omit from his brief a nonfrivolous argument that Mena wished to pursue.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985); <u>Aparicio</u>, 269 F.3d at 95.  He must establish that counsel opted not to raise "significant and obvious issues while pursuing issues that were clearly and significantly weaker."  <u>Mayo</u>, 13 F.3d

34

at 533.  As shown above, each of the substantive claims that Mena urges should have

been advanced on appeal is meritless.  Moreover, contrary to Mena's assertions, Mena's

trial counsel did not provide assistance that violated constitutional norms.  Mena's

appellate counsel consequently could not have been ineffective merely because he

declined to raise nonmeritorious ineffective assistance claims as part of Mena's direct

appeal.  See Lewin v. Ercole, No. 05 Civ. 10339 (BSJ) (MHD), 2012 WL 2512016, at *8

(S.D.N.Y. June 28, 2012) ("Since the Court has found that [p]etitioner's Sixth

Amendment claim regarding his trial counsel's performance is meritless, [his] appellate

counsel cannot be found ineffective for choosing not to pursue this claim on appeal.");

Feliciano v. United States, Nos. 01 Civ. 9398, 95 Cr. 941 (PKL), 2004 WL 1781005, at

*8 (S.D.N.Y. Aug. 10, 2004) ("Because [the] petitioner's ineffective assistance claim is

without merit, counsel's decision not to pursue the claim on appeal was certainly not an

omission of a significant issue.").

IV.   Conclusion

       For the foregoing reasons, I recommend that Mena's Amended Petition be

denied.  Furthermore, because Mena has not made the substantial showing of the denial of

a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability

should not issue.

V.    Notice of Procedure for Filing of Objections to this Report and Recommendation

       The parties shall have fourteen days from the service of this Report and

Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule

72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

to the chambers of the Honorable Andrew L. Carter, to my chambers at the Daniel Patrick

Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, and

to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

Any requests for an extension of time for filing objections must be directed to Judge

Carter.  The failure to file timely objections will result in a waiver of those objections for

purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(d), 72(b).

        SO ORDERED.

Dated:      New York, New York
           May 31, 2016

                                            FRANK MAAS
                       United States Magistrate Judge

Copies to:

Pedro Mena (via U.S. Mail)
08-A-3322
Sing Sing Correctional Facility
354 Hunter Street
P.O. Box 116
Ossining, New York 10562-5442

Counsel of record (via ECF)